**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF CALLAN MARINE LTD.** | * | **CIVIL ACTION: 2:26-cv-01362** |
| | * | |
| | * | **JUDGE JAMES D. CAIN, JR.** |
| | * | |
| | * | **MAG. THOMAS P. LEBLANC** |
| | * | |
| | * | **Admiralty – Rule 9(h)** |

**************************************

**ANSWER AND CLAIM OF CLAIMANT KCM FARMS, LLC**

Claimant KCM Farms, LLC ("KCM" or "Claimant") files this Answer and Claim in response to the Verified Complaint for Exoneration from and/or Limitation of Liability, Doc. No. 1 (the "Complaint") filed by Callan Marine Ltd. ("Callan" or "Petitioner"), in its capacity as putative owner and operator of the dredge GENERAL ARNOLD, and would respectfully show:

**FIRST DEFENSE**

The allegations of the Complaint fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).

**SECOND DEFENSE**

The Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, is unconstitutional in that it deprives Claimant of property rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and does not provide for equal protection of the laws pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

## THIRD DEFENSE

Claimant asserts the flotilla doctrine. The limitation fund is inadequate and the Complaint should be dismissed because Petitioner has failed to deposit adequate security for the GENERAL ARNOLD and for the additional vessels within the flotilla, which were under a common operational control, supervision, and enterprise.

## FOURTH DEFENSE

The limitation fund is inadequate and the Complaint should be dismissed because Petitioner has failed to deposit adequate security for the GENERAL ARNOLD and for the additional vessels within the flotilla which were under common operational control, supervision and enterprise. Pursuant to Rule F(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the proper limitation fund must be deposited at the time of filing. Petitioner's deposit, at the time of filing, did not meet federal standards. As such, this limitation action must be dismissed.

## FIFTH DEFENSE

The limitation fund is inadequate and the Complaint should be dismissed because Petitioner has failed to accurately identify all of the vessels in the flotilla which should be included in the limitation fund.

## SIXTH DEFENSE

The Limitation of Liability Act is not applicable to the instant case because at all times pertinent herein, the GENERAL ARNOLD and/or other vessels contained within the flotilla were operated in a willful, wanton, and reckless manner or, in the alternative, the conduct and

actions which lead to Claimant's injuries took place with the privity and knowledge of the owners, managing owners, owners *pro hac vice*, and/or operators of the vessels involved.

**SEVENTH DEFENSE**

The Limitation of Liability Act is not applicable in the instant case because at all relevant times, the GENERAL ARNOLD and/or other vessels contained within the flotilla were known by the owner and/or owner *pro hac vice* to be unseaworthy.

**EIGHTH DEFENSE**

To the extent Petitioner's insurers attempt to avail themselves of the limitation/exoneration defense, Claimant asserts that the Limitation of Liability Act is unavailable to insurers of vessel owners under the circumstances. In the alternative, no *prima facie* case has been made establishing they are entitled to avail themselves of the Limitation of Liability Act.

**NINTH DEFENSE**

The Verified Complaint for Exoneration From or Limitation of Liability contains vague and ambiguous statements which are objectionable under Federal Rule of Civil Procedure 12(e), and Claimant seeks more definitive statements of the allegations, regardless of the nature, manner and extent of their Claim and Answer herein.

**TENTH DEFENSE**

The events culminating in the damages to Claimant were the result of negligence, fault, or want of due care on the part of Petitioner and/or those for whom Petitioner is responsible, and/or unseaworthiness of the GENERAL ARNOLD and/or other vessels within the flotilla under common operational control, supervision, and enterprise, all of which was within the privity and

knowledge of Petitioner, for which the Complaint for Exoneration From and/or Limitation of Liability should be denied.

**ELEVENTH DEFENSE**

The events culminating in the damages to Claimant were not the result of any negligence, fault, or want of due care on its part or those for whom it may be responsible.

**TWELFTH DEFENSE**

Claimant further alleges that there was insurance coverage on the GENERAL ARNOLD insuring Petitioner in the event of an occurrence such that which is the subject of Claimant's claims, and the proceeds of said insurance policy should be included in this limitation proceeding (in the event the Court determines these limitation proceedings are appropriate).

**THIRTEENTH DEFENSE**

Claimant states that the proceeds of any judgment, award, or settlement which may be received by Petitioner from any third party in recompense of any losses or damages sustained herein to the property or interests of Petitioner, as a result of the fault or alleged fault of said third party, must be included in the limitation fund.

**FOURTEENTH DEFENSE**

In filing this Answer and Claim, Claimant specifically reserves all rights to pursue all available claims in state court for resolution of any and all issues beyond the exclusive jurisdiction of this Admiralty Court pursuant to the "Saving to Suitors" clause, 28 U.S.C. § 1333, and all state law remedies. The filing of this Claim and Answer is in no way a waiver of this

right and defense and Claimants are not agreeing to join all issues in this proceeding by filing this Claim and Answer. Claimant further states its desire and invokes its right to a jury trial. *See Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed. 720 (1963); *Luera v. M/V Alberta*, 635 F.3d 181, 195-96 (5th Cir. 2011).

**FIFTEENTH DEFENSE**

Claimant specifically reserves all rights to pursue all available claims in the forum of his choice for resolution of any and all issues beyond the exclusive jurisdiction of this admiralty court pursuant to the "Saving to Suitors" clause, 28 U.S.C. § 1333, and all remedies, and no part of this Claim and Answer is a waiver of this defense or these rights. Claimant will move the Court to lift the injunction and stay of proceedings in other forums. *In re Tetra Applied Techs. L P*, 362 F.3d 338 (5th Cir. 2004). Further, pursuant to the holdings of *Petition of Liverpool, Brazil & River Plate Steam Nav. Co.*, 57 F.2d 176 (2d Cir. 1932) and *The Silver Palm*, 94 F.2d 776 (9th Cir. 1937), upon Petitioner's failure to obtain relief in this limitation action (should resolution of this action precede judgment in other actions), Claimant hereby asserts and claims his right to have his claims and damages tried to a jury in the court of his choosing.

**SIXTEENTH DEFENSE**

The purpose of a limitation action is to provide a single forum for determining whether the vessel and its owner are liable at all, whether the owner may in fact limit liability to the value of the vessel and pending freight, and how the funds are to be distributed to the claimants. *See* 46 U.S.C. § 30501, *et seq.*; *see also* THOMAS J. SCHOENBAUM, ADMIRALTY AND

MARITIME LAW 2nd Ed. § 13-5 (1994). Because of the nature and circumstances of this action, a limitations proceeding is inappropriate and unjustified.

**SEVENTEENTH DEFENSE**

Claimant reserves the right to contest the appraisal value of the GENERAL ARNOLD and/or for any additional vessels in the flotilla, their engines, apparel, appurtenances, pending freight, etc., and the adequacy of the security.

**EIGHTEENTH DEFENSE**

The limitation fund is inadequate and should be increased and/or this action should be dismissed because the limitation fund does not properly account for the value of the appurtenances, attachments, freight and/or cargo aboard the vessel, subject to the control of the vessel, and/or owned by the Petitioner.

**NINETEENTH DEFENSE**

Petitioner is not a "vessel owner" entitled to seek exoneration from or limitation of liability under 46 U.S.C. § 30501, *et seq*.

**TWENTIETH DEFENSE**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court lacks subject-matter jurisdiction over this matter and Petitioner's Verified Complaint for Exoneration from or Limitation of Liability should be dismissed with prejudice.

**TWENTY-FIRST DEFENSE**

Petitioner's Complaint is untimely and, therefore, must be dismissed. *See* 46 U.S.C. § 30529.

**AND NOW,** specifically reserving all defenses asserted herein, including, without limitation, Claimant's right to pursue his claims in state court pursuant to the "Saving to Suitors" clause, 28 U.S.C. § 1333, and all state law remedies, Claimant responds to the individual Paragraphs of the Verified Complaint for Exoneration From or Limitation of Liability, upon information and belief, as follows:

1.

Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

2.

Claimant admits that the GENERAL ARNOLD is a dredge. Claimant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in this paragraph, and therefore denies those allegations.

3.

To the extent a response is required, Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

4.

To the extent a response is required, Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

5.

Claimant admits that the GENERAL ARNOLD conducted dredging operations in and near Calcasieu Lake, in Cameron Parish, in the Summer of 2025, and that in the course of this dredging operation it caused a sediment discharge and levee breach and related releases and migration of material (including associated silt, mud, sediment, contaminates, dredge spoil, and/or dredge discharged) that caused significant damage to Claimant's operations, as set forth in Claimant's statement of claim, *infra*. This admitted scope of operations is referred to hereinafter as the "Incident." Claimant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in this paragraph, and therefore denies those allegations.

6.

Claimant denies that Petition exercised due diligence, that the GENERAL ARNOLD was operated properly and soundly, and that it was fit for the service in which it was engaged. Claimant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in this paragraph, and therefore denies those allegations.

7.

Claimant denies that the Incident was not caused or contributed to by any fault, negligence, or lack of care on the part of Petitioner, its owners or officers, or the General Arnold. Claimant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in this paragraph, and therefore denies those allegations.

8.

Claimant denies that allegations in this paragraph.

9.

Claimant denies that Petitioner and the GENERAL ARNOLD are entitled to the benefits of the Limitation of Liability Act.

10.

Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

11.

Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

12.

Claimant admits it has a claim. Claimant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations asserted in this paragraph, and therefore denies those allegations.

13.

Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

14.

The allegations contained in this paragraph are not statements of fact, but conclusions of law, from which no response is necessary. To the extent a response is required, Claimant acknowledges the legal precepts discussed in this paragraph, and asserts its desire to challenge the timing, and traverse the sufficiency, of the security addressed therein. To the extent a further

response is required, Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

15.

Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

16.

The allegations contained in this paragraph are not statements of fact, but conclusions of law, from which no response is necessary. To the extent a response is required, Claimant acknowledges the legal precepts discussed in this paragraph. To the extent a further response is required, Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

17.

The allegations contained in this paragraph are not statements of fact, but conclusions of law, from which no response is necessary. To the extent a response is required, Claimant lacks knowledge or information sufficient to form a belief about the truth of the allegations asserted in this paragraph, and therefore denies those allegations.

**AND NOW**, specifically reserving all defenses asserted herein, including, without limitation, Claimant's right to pursue his claim in state court pursuant to the Saving to Suitors clause, 28 U.S.C. § 1333, and all state law remedies, Claimant files this Claim in the Verified Complaint for Exoneration from or Limitation of Liability of the GENERAL ARNOLD, and states that:

**STATEMENT OF CLAIM**

1.

Claimant re-urges each and every defense and objection set forth above as if the same were stated herein verbatim.

2.

KCM Farms is a Louisiana limited liability company domiciled in the Parish of Calcasieu, State of Louisiana.

3.

In or around 2022, the Cameron Parish Port, Harbor and Terminal District received a grant to establish a 48-acre oyster park (the "Cameron Oyster Park") at the southern end of Calcasieu Lake for the commercial production of oysters.

4.

The Cameron Oyster Park included 15 farm sites to be used for Alternative Oyster Culture. Alternative Oyster Culture (AOC) is a method of growing oysters in floating cages or bottom-placed cages attached to pylons.

5.

According to the Cameron Parish Port, Harbor and Terminal District, the location of the Cameron Oyster Park was "carefully selected" for its "potential for sustainable oyster farming." The focus of the Cameron Oyster Park was "producing boutique oysters, meticulously raised in controlled conditions within lots leased by farmers."

6.

On September 20, 2024, Claimant applied for an Oyster Farming Lease to lease plots 1, 3, 2, and 4 in the Cameron Oyster Park. The KCM Farms permit was approved by a representative of the Port, Harbor & Terminal District that same day.

7.

Claimant began farming at the Cameron Oyster Park in the fall of 2024. By summer 2025, Claimant had upwards of 5 million oysters nearing harvestable size, and an additional 5 million oysters in various stages of growth.

8.

With its oysters growing well, Claimant began engaging with potential buyers and distributors. Claimant traveled throughout the Gulf South and beyond, providing sample oysters from its farm and using the trade name “The Oyster Ranch.” The quality of Claimant’s farm-raised oysters was exceptional and garnered rave reviews. Based on those samples and on Claimant’s business development efforts, by summer 2025, Claimant had secured commitments from various high-end restaurants both in Louisiana and elsewhere to provide its oysters. Claimant planned to fully launch The Oyster Ranch sales on September 1, 2025. Louisiana.

9.

Meantime, two companies, Venture Global CP2 LNG, LLC ("VG CP2"), and Venture Global Calcasieu Pass, LLC ("VG Calcasieu Pass"), each obtained a Coastal Use Permit (CUP) for large-scale construction projects in the immediate area of Claimant's farm. On the map below, Claimant's farm is represented by the small rectangular shape in the upper left. VG CP2's project (CUP No. P20211131) is to the southeast, running along the south shore of Calcasieu Lake. VG Calcasieu Pass's project (CUP No. P20241009) is immediately to the east of the CP2 project:




10.

As indicated by both CUP No. 20241009 and CUP No. 2021131, Callan served as the dredging contractor for the Projects. The GENERAL ARNOLD, and perhaps other vessels owned, operated, or chartered, was used to conduct the dredging operations.

According to its permit application, VG CP2's project contemplated the construction and operation of natural gas liquefication, storage, and export facilities at a liquefied natural gas terminal. The proposed project was to take up more than 737 acres on the mainland and shoreline, requiring, among other things, the construction of bridges and roads, demolition, dredging, filling, backfilling, and erosion control. The risk that the project, and specifically its dredging activities, would create to the nearby ecosystem is reflected in an Impact Assessment submitted in connection with its permit application by Defendant Environmental Resources Management (ERM), the agent for the permit application. This Impact Assessment states that "[p]otential construction impacts on water quality may include siltation in peripheral wetlands and waterbodies during excavation and filing activities. . .and increased turbidity in the Calcasieu Ship Channel due to dredging at the Marine Facilities."

11.

According to its permit application, VG Calcasieu Pass's project contemplated the construction of a Beneficial Use of Dredged Material (BUDM) site occupying approximately 1,312 acres of open water and fragmented marsh. The BUDM site was to be used for placement of material derived from periodic maintenance dredging at various sites, including VG CP2's marine facilities. Providence Engineering and Environmental Group, the agent for the permit application, represented that dredged material would pass through a slurry pipeline, helped along by booster pumps, and would be contained by earthen containment dikes or berms.

12.

Unfortunately, Callan and the GENERAL ARNOLD, and perhaps other vessels owned, operated, and/or chartered by Callan in connection with this project, failed to execute their operations with reasonable care, and caused the very siltation and turbidity in neighboring waterways that Defendants outlined when applying for the permit. This negligent conduct included, without limitation, dredging beyond designated or permitted areas; depositing dredge materials outside of designated areas; and/or undermining or breaching levees, berms, or other containment structures, thus allowing dredged material and other contaminants to escape containment and spill or migrate into adjoining waterways.

13.

On or about August 4, 2025, Callan and the GENERAL ARNOLD's dredging operations caused a large-scale discharge that was reported in the local media.[1] KPLC reported that a surge of sediment spilled out of the containment area for the dredged material, flooding into the surrounding channels and Calcasieu Lake. The escaped sediment had the effect of burying oyster cages in the area.

14.

Claimant noticed an immediate impact to the quality of the oysters grown on his plots. Silt and mud started collecting on Claimant's oysters and cages. Oysters were immediately contaminated from this silt and mud. Claimant began to discover calcium deposits under the "meat" of many of its oysters. Oyster mortality increased and was unavoidable despite all attempts to mitigate the exposure. Oysters affected in the ways described above are not marketable.

[1] https://www.kplctv.com/2025/08/09/dredging-accident-cameron-parish-leaves-fishermen-angry-with-questions/

15.

On or about September 25, 2025, the Louisiana Illuminator news outlet reported that "dredged mud [from the CP2 project] is supposed to be placed within marsh creation projects around the refuge, but eyewitnesses and officials confirm the material has spilled outside those areas, creating issues for local fishermen."[2] One oyster farmer told the Illuminator that "dredged materials inundated the floating oyster cages he harvests with other fisherman, killing some of their crop."[3]

16.

Also according to the Illuminator, at a September 2, 2025 Cameron Parish Police Jury meeting, "representatives from Venture Global acknowledged that about 15,000 cubic yards of dredge material had spread beyond permitted areas in early August [2025]."[4] This timing coincides with Claimant's observation of contamination in its oyster cages. At that meeting, the Louisiana Department of Wildlife and Fisheries abnormal levels of sediment on the Calcasieu Lake Reefs near The Oyster Ranch

Upon information and belief, these incidents represent only two instances of the types of discharges that are directly responsible for causing Claimant's damages, and Claimant reserves the right to supplement and/or amend its Petition to plead additional allegations in this regard.

---

[2] https://lailluminator.com/2025/09/25/cameron-parish-fishermen-clash-with-venture-global-over-dredging-mess/
[3] Id.
[4] Id.

17.

It is the intent of Claimant to assert herein all legal remedies it may have against Callan and/or the GENERAL ARNOLD, including such claims as may arise under Louisiana or general maritime law (including such claims as may be afforded under the "maritime but local" doctrine), reserving at all times Claimant's right to have these claims adjudicated in a state court forum pursuant to the "Saving to Suitors" clause, 28 U.S.C. § 1333.

18.

The dredging operations conducted by Callan and the GENERAL ARNOLD pursuant to CUP No. 20241009 and CUP No. 2021131are in violation of the terms of the permits, and otherwise constitute fault and negligence.

19.

Claimant specifically invokes the doctrine of negligence *per se*, or alternatively the precept that a regulatory regime can set forth guidelines that a trier-of-fact may consider when determining the applicable standard or care.

20.

The conduct of Callan and the GENERAL ARNOLD constitutes gross negligence, in that their acts exhibit a flagrant and callous disregard for the health and safety of Louisiana seafood consumers, and a similar flagrant and callous disregard for the livelihood, property, and interests of Louisiana fishermen. Furthermore, the subject conduct involved an extreme degree of risk considering the known dangers, probability and magnitude of potential harm to Claimant, other fishermen, and local seafood consumers. Calland and the captain and crew of the GENERAL

ARNOLD had actual, subjective awareness of the risk of harm, but nonetheless chose to consciously disregard such risk.

21.

The above negligent acts and omissions caused direct, indirect, and/or consequential damages, loss and harm to Claimant, its oyster farm, and its business.

22.

Defendants are further liable to Claimant pursuant to La. Civil Code articles 667, 668, and 669 as a result of Defendants causing damage, loss, and harm to the neighboring property leased by Claimant from the Cameron Port, Harbor & Terminal District. Negligent acts and omissions are not required to recover under Civil Code articles 667-669. See *Inabnet v. Exxon Corp.,* 642 So.2d 1243 (La. 1994) (involving damage to oyster reefs from dredging operations).

23.

Claimant and its oyster operation have sustained damages, as more fully described below, caused by dredging and related activities conducted in the nearby area by the GENERAL ARNOLD and/or related vessels owned by Callan, Petitioner herein.

24.

Callan and the GENERAL ARNOLD are liable for all or part of the claims asserted below because their actions or inactions directly caused Claimant to harvest oysters that were dead, contaminated, discolored, or otherwise unfit for consumption.

25.

Claimant reserves its right to amend this Claim to assert additional claims as may become evident from discovery, including without limitation any claim that the GENERAL ARNOLD, or

any other vessel owned, operated, and/or chartered by Callan in conjunction with this dredging operation, was unseaworthy or otherwise unfit for use in such operation.

**DAMAGES**

26.

Claimant has suffered substantial damage to its oyster farm operation and oyster production as a direct result of Callan Marine and the GENERAL ARNOLD's negligent and careless dredging and disposal operations, entitling Claimant to all past, present, and future compensatory damages incurred. These damages include losses of Claimant's oyster farm, its crop, its production, its business reputation, its operations, its profitability, and its future prospects.

27.

Under Louisiana law, Claimant may recover the following non-exclusive items of loss, damage, and harm from Defendants:

a. Loss of crop, seed, and production;
b. Loss of earnings;
c. Loss of sales;
d. Diminished value of its leasehold interest;
e. Diminution in value of its business;
f. Costs of capital expenditures, equipment and fixtures;
g. Loss or diminution of business reputation;
h. Reduction or loss of the company's goodwill;
i. Loss of future profits;
j. Costs of replacing seed and inventory;
k. All costs associated with mitigation efforts;
l. Judicial interest, from the date of Claimant's judicial demand in state court;
m. Other damages, loss, or harm to be proven at trial on the merits.

28.

Claimant is also entitled to recover punitive damages due to the gross negligence of Call and the GENERAL ARNOLD.

29.

Claimant undertook reasonable efforts to mitigate the damage to its oysters and to its farm caused by the activities of Callan and the GENERAL ARNOLD, including but not limited to the use of different techniques and equipment, but was unable to prevent or ameliorate its damages.

30.

Claimant prays that after due proceedings are had that:

a. Petitioner be denied exoneration from, or limitation of, liability, and its limitation complaint be dismissed;

b. Alternatively, Petition be required to deposit additional security in the minimum amount required by law for the full value of all vessels in the flotilla which were under common operational control and supervision and engaged in a common enterprise and that said security be by way of a cash deposit into the registry of the Court or a bond issued by a surety approved by the Court and be based upon an appraisal by a commissioner appointed by the Court; in default of which the Verified Complaint seeking Exoneration from or Limitation of Liability be dismissed; and pending such deposit any injunction and/or restraining order be dissolved;

c. That an order be entered that the occurrence referred to in the Verified Complaint happened with the knowledge and privity of Petitioner;

d. That an order be entered that Claimant is entitled to a jury trial on this claim to recover damages against Petitioner for the losses and damage of Claimant; and/or

e. There be judgment rendered herein in favor of Claimant awarding full compensation for the damages caused him by the Petition and the GENERAL ARNOLD, plus pre-judgment and post-judgment interest, all costs of court, and all other relief to which Claimant may show himself justly entitled at law or equity.

31.

Claimant respectfully requests a trial by jury on all claims. *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed. 720 (1963).

By Attorneys:

TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA 70810
Telephone: (225) 400-9991; Fax: (225) 448-2568

_______*/s/ Christian J. Gremillion*_______________________
Donald T. Carmouche, #2226 (dcarmouche@tcmlawoffice.com)
Victor L. Marcello, #9252 (vmarcello@tcmlawoffice.com)
John H. Carmouche, #22964 (jcarmouche@tcmlawoffice.com)
Brian T. Carmouche, #30430 (bcarmouche@tcmlawoffice.com)
Todd J. Wimberley, #34862 (twimberley@tcmlawoffice.com)
D. Adele Owen, #21001 (aowen@tcmlawoffice.com)
Leah C. Poole, #35092 (lpoole@tcmlawoffice.com)
Brandon J. Fremin, #28475 (bfremin@tcmlawoffice.com)
Christian J. Gremillion, #41259 (mgremillion@tcmlawoffice.com)
Michael J. D'Albor, #41206 (mdalbor@tcmlawoffice.com)
Ben Wallace, #39516 (bwallace@tcmlawoffice.com)
A. Paul LeBlanc, Jr. #23186 (pleblanc@tcmlawoffice.com)

*Attorneys for Claimant*